TRACY L. WILKISON
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
GAVIN L. GREENE (Cal. Bar No. 230807)
Assistant United States Attorney
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-4600
    Facsimile: (213) 894-0115
    E-mail: Gavin.Greene@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> Monel Herscovici, <br><br> Defendant. | Case No. 2:21-cv-06150 <br><br> Complaint to reduce FBAR penalty to judgment |

    The United States of America, by its undersigned counsel, brings this civil action to reduce to judgment an unpaid federal penalty assessment, interest thereon, and late payment penalty as provided by law, and to reduce such assessments to judgment. For its complaint against Monel Herscovici (Defendant), the United States of America complains and alleges as follows.

1

# I. General Allegations

**Jurisdiction and Venue**

1. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States, 28 U.S.C. § 1345 because the United States is the plaintiff, and 28 U.S.C. § 1355(a) because this is an action for the recovery or enforcement of penalty incurred under an Act of Congress.

2. This action is commenced at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, pursuant to 31 U.S.C. § 3711(g)(4)(C), and in accordance with 31 U.S.C. § 5321(b)(2).

3. Venue for this action is within the Central District of California under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

**Statutory and regulatory provisions for the FBAR penalty.**

4. Citizens of the United States are required to report to the IRS certain activity with foreign financial agencies for each year in which the activity occurs. 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a).

5. One such activity is "having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350(a).

6. The form that needs to be completed for this annual reporting requirement is the Report of Foreign Bank and Financial Accounts (FBAR).

7. For calendar years before 2017, the FBAR report for foreign financial accounts exceeding $10,000 maintained during a calendar year was due by June 30 of the following calendar year. 31 C.F.R. § 1010.306(c).

8. Civil penalties can be assessed against an individual who, whether willfully or non-willfully, fails to comply with these reporting requirements. 31 U.S.C. § 5321(a)(5)(A).

9. For willful violations, the penalty assessed is the greater of $100,000 or 50% of the balance in the foreign financial account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)(i).

## II. Claim for Relief: Reduce Assessments to Judgment

10. The allegations made in the preceding paragraphs in this complaint are incorporated herein by reference.

**Defendant established multiple foreign bank accounts held by a shell corporation with himself as the beneficial owner**

11. In 2006, Defendant started his own courier company, Coast Courier LLC.

12. Defendant was the owner and President of Coast Courier, LLC.

13. On April 11, 2008, Coast Courier, LLC was named as a defendant in a class action lawsuit, *Peter Holtzen v. Coast Courier, LLC* (Alameda County case number RG08381488, later transferred to Los Angeles Superior Court, case number BC393889).

14. After Defendant was aware of the litigation against Coast Courier, LLC, Defendant took affirmative steps to hide his assets.

15. On May 20, 2008, Hamsa Investments, LLC was incorporated in the West Indies.

*Bank Sarasin*

16. On September 3, 2008, a bank account was created with Bank Sarasin in Switzerland, with a bank account number ending in 39.5, that was held in the name of Hamsa Investments, LLC.

17. Defendant was the beneficial owner of the Bank Sarasin account with an account number ending in 39.5.

18. On or about September 17, 2008, Defendant made an initial deposit of $249,800.00 from Citibank N.A. in the United States to the Bank Sarasin account with an account number ending in 39.5.

### *Maerki Baumann*

19. On March 24, 2009, Defendant signed the Request to Open an Account with Maerki Baumann & Co. AG (Maerki Baumann) in Zurich, Switzerland for two accounts with account numbers ending in 834 and 842.

20. The Maerki Baumann bank accounts with account numbers ending in 834 and 842 were held in the name of Hamsa Investments, LLC, and Defendant was the beneficial owner.

21. On April 20, 2009, a check signed by Defendant from his account at California Bank & Trust in the amount of $200,000.00 was deposited into the Maerki Baumann account ending in 834.

22. On April 20, 2009, a check signed by Defendant from his account at California Bank & Trust in the amount of $400,000.00 was deposited into the Maerki Baumann account ending in 842.

23. On April 30, 2009, $250,431.06 was transferred from the Bank Sarasin account with account number ending in 39.5 to the bank account at Maerki Baumann with account number ending in 842.

24. On May 4, 2009, Defendant closed his account at Bank Sarasin with the account number ending in 39.5.

### *Volksbank*

25. In 2009, two bank accounts were created with Volksbank AG Liechtenstein (Volksbank) with bank account numbers ending in 050 and 051.

26. The Volksbank accounts with account numbers ending in 050 and 051 were held in the name of Hamsa Investments, LLC, and Defendant was the beneficial owner.

27. On July 9, 2009, Defendant signed a letter to Maerki Baumann to close the Hamsa Investments LLC account and transfer all investments to Volksbank Lichenstein.

28. On July 30, 2009, securities with a value of $151,166.00 were transferred from the Maerki Baumann account with an account number ending in 834 to Volksbank.

29. On July 30, 2009, securities with a value of $496,869.00 were transferred from the Maerki Baumann account with an account number ending in 842 to Volksbank.

30. On August 3, 2009, a wire transfer of $215,418.94 went from the Maerki Baumann account with an account number ending in 834 to Volksbank.

31. On August 3, 2009, a wire transfer of $59,332.40 went from the Maerki Baumann account with an account number ending in 842 to Volksbank.

32. On January 29, 2010, payment was made from the Volksbank account with an account number ending in 050 to Defendant in the amount of $200,023.75.

33. On June 14, 2011, two transfers totaling $679,299.64 ($325,139.38 plus $354,160.24) were transferred from Volksbank to Defendant's bank account at California Bank & Trust in the United States.

34. In June 2011, both Volksbank accounts with account numbers ending in 050 and 051 were closed.

**Defendant falsely denied owning foreign accounts and underreported his tax liabilities**

35. Defendant filed a U.S. Individual Income Tax Return (Form 1040) for each tax year from 2008 through 2011.

5

36. Defendant's tax returns for tax years 2008 through 2011 were prepared by Alex Hershtik, CPA at The CPA Advantage.

37. Prior to preparing Defendant's income tax returns for tax years 2008 through 2011, The CPA Advantage sent Defendant a tax organizer that explained U.S. filing requirements for foreign assets, and explicitly stated that foreign accounts, whether directly or indirectly held, are required to be reported on an FBAR.

***Schedule B***

38. Defendant's tax returns for tax years 2008 through 2011 included Schedule B – Interest and Ordinary Dividends.

39. For tax years 2008 through 2011, Part III of Schedule B contained the following text:

> You must complete this part if you (a) had over $1,500 of taxable interest or ordinary dividends; or (b) had a foreign account; or (c) received a distribution from, or were a grantor of, or a transferor to, a foreign trust.

40. Defendant had foreign bank accounts for tax years 2008 through 2011, so he was required to complete Part III of Schedule B, including question 7(a) for each of those years.

6

41. For tax year 2008, on Part III of Schedule B, question 7(a) asked:

At any time during 2008, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See page B-2 for exceptions and filing requirements for Form TD F 90-22.1.

42. Page B-2 of the 2008 Instructions for Schedules A & B (Form 1040) contained the following text:

Line 7a
Check the "Yes" box on line 7a if … [a]t any time during 2008 you had an interest in or signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account).
…
See Form TD F 90-22.1 to find out if you are considered to have an interest in or signature over a financial account in a foreign country (such as a bank account, securities account, or other financial account). You can get Form TD F 90-22.1 by visiting the IRS website at www.irs.gov/pub/irs-pdf/f90211.pdf.

If you checked the "Yes" box on line 7a, file Form TD F 90-22.1 by June 30, 2009, with the Department of the Treasury at the address shown on that form.

43. For tax year 2008, Defendant's tax returns checked the "No" box for question 7(a).

7

44. For tax year 2009, on Part III of Schedule B, question 7(a) asked:

> At any time during 2009, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See instructions on back for exceptions and filing requirements for Form TD F 90-22.1.

45. For tax year 2009, Defendant's tax returns checked the "No" box for question 7(a).

46. For tax year 2010, on Part III of Schedule B, question 7(a) asked:

> At any time during 2010, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See instructions on back for exceptions and filing requirements for Form TD F 90-22.1.

47. For tax year 2010, Defendant's tax returns checked the "No" box for question 7(a).

48. For tax year 2011, on Part III of Schedule B, the first part of question 7(a) asked:

> At any time during 2011, did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country? See instructions.

49. For tax year 2011, on Part III of Schedule B, the second part of question 7(a) stated:

> If "Yes," are you required to file Form TD F 90-22.1 to report that financial interest or signature authority? See Form TD F 90-22.1 and its instructions for filing requirements and exceptions to those requirements.

50. For tax year 2011, Defendant's tax returns checked the "No" box for both parts of question 7(a).

***Understatement of tax liabilities***

51. For tax years 2008 through 2011, Defendant's foreign bank accounts earned interest.

52. For tax years 2008 through 2011, Defendant failed to report the interest income from his foreign bank accounts on his income tax returns.

53. For tax years 2008 through 2011, Defendant understated his income tax liabilities.

54. For tax years 2008 through 2011, Defendant signed his tax returns under penalties of perjury affirming that he had examined his tax returns and accompanying schedules and to the best of his knowledge and belief, they were true, correct, and complete.

**Defendant willfully failed to file FBARs for the years 2008-2011**

55. Since 2003, Defendant has been a naturalized United States citizen.

***2008***

56. In 2008, Defendant had a financial interest in a foreign bank account with Bank Sarasin in Switzerland with a bank account number ending in 39.5 with a high balance for the year of $250,564.

9

57. On June 30, 2009, Defendant knew that he was required to file an FBAR and disclose his foreign Bank Sarasin account to the IRS.

58. Defendant willfully failed to timely file an FBAR for the year 2008.

***2009***

59. In 2009, Defendant had a financial interest in foreign bank accounts with Maerki Baumann with account numbers ending in 834 and 842 with high balances for the year of $199,981 and $650,421 respectively.

60. On June 30, 2010, Defendant knew that he was required to file an FBAR and disclose is foreign Maerki Baumann accounts to the IRS.

61. Defendant willfully failed to timely file an FBAR for the year 2009.

***2010***

62. In 2010, Defendant had a financial interest in foreign bank accounts with Volksbank with account numbers ending in 050 and 051 with high balances for the year of $339,662 and $362,342 respectively.

63. On June 30, 2011, Defendant knew that he was required to file an FBAR and disclose his foreign Volksbank accounts to the IRS.

64. Defendant willfully failed to timely file an FBAR for the year 2010.

***2011***

65. In 2011, Defendant had a financial interest in foreign bank accounts with Volksbank with account numbers ending in 050 and 051 with high balances for the year of $326,289 and $355,388 respectively.

66. On June 30, 2012, Defendant knew that he was required to file an FBAR and disclose his foreign Volksbank accounts to the IRS.

67. Defendant willfully failed to timely file an FBAR for the year 2011.

**FBAR Penalty Assessment**

68. On March 29, 2018, the IRS sent Form 3709 to Defendant explaining the reasons why he was liable for the FBAR penalty.

69. On July 22, 2019, Defendant signed the Consent to Extend the Time to Assess Civil Penalties Provided by 31 U.S.C. § 5321 for FBAR Violations for the years 2008, 2009, 2010, and 2011 to June 30, 2020.

70. On August 21, 2019, the IRS assessed willful FBAR penalties against Defendant for the years 2008 through 2011.

71. The following is a summary of the high balances of the foreign bank accounts for the years 2008 through 2011, and the corresponding FBAR penalty calculated as 10% of the high balance for each year:

| Bank Account | 2008 High Balance | 2009 High Balance | 2010 High Balance | 2011 High Balance | Total |
|---|---|---|---|---|---|
| Bank Sarasin (39.5) | $ 250,564 | | | | $ 250,564 |
| Maerki Baumann (834) | | $ 199,981 | | | $ 199,981 |
| Maerki Baumann (842) | | $ 650,421 | | | $ 650,421 |
| Volksbank (050) | | | $ 339,662 | $ 326,289 | $ 665,951 |
| Volksbank (051) | | | $ 362,342 | $ 355,388 | $ 717,730 |
| Total High Balance | $ 250,564 | $ 850,402 | $ 702,004 | $ 681,677 | $ 2,484,647 |
| FBAR Penalty | $ 25,056 | $ 85,040 | $ 70,200 | $ 68,168 | $ 248,464 |

72. On August 26, 2019, notice and demand for payment was sent to Defendant for the years 2008 through 2011 on Form 3708.

73. Despite timely notice and demand for payment of the FBAR assessment, Defendant has failed to pay the FBAR and late payment penalties assessed against him for the years 2008 through 2011.

74. Interest and penalties have accrued on the assessed FBAR penalties as provided by law.

75. As of July 26, 2021, Defendant was liable to the United States for $281,914.74, which is comprised of the FBAR penalty, interest, and penalties

for late payment under 31 U.S.C. § 3717(e)(2) for the years 2008 through 2011.

### III. Relief Requested

WHEREFORE, the United States of America requests the following relief from the Court:

A. Enter judgment in favor of the United States of America and against Defendant in the amount of $281,914.74 as of July 23, 2021, plus all statutory accruals, including interest and penalties, plus costs and expenses;

B. Grant the United States its costs incurred in bringing this action; and

C. Order any further relief the Court deems just and appropriate.

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: July 30, 2021

/s/
GAVIN GREENE
Assistant United States Attorney
Attorneys for the United States of America